UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THOMAS BARNHILL,                                          NOT FOR PUBLICATION

                              Plaintiff,

                                                         **MEMORANDUM & ORDER**
                    v.                                   12-CV-2420 (PKC)

DUKE TERRELL, SOROYA ROSA,
DR. MICHAEL BORECKY, DR. R. NEWLAND;
SIXTO RIOS, FREDDY NUNEZ, GLENFORD
EDWARDS, GAIL MCMILLAN, and TONI CUYLER,

                              Defendants.

------------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

        Plaintiff Thomas Barnhill, a former inmate at the Metropolitan Detention Center in

Brooklyn, New York ("MDC"), asserts claims relating to allegedly inadequate medical treatment

he received while incarcerated, resulting in recurring skin infections, and causing him pain and

suffering.  Plaintiff also alleges that he was exposed to tuberculosis while incarcerated.  (Dkts. 1-

3, 42.)  Presently before the Court is the motion of all of the Defendants to dismiss Plaintiff's

complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6) or, in the

alternative, for summary judgment pursuant to FRCP 56.  (Dkt. 41.)  The Court dismisses the

complaint, in its entirety, based on the lack of subject matter jurisdiction as to some of its claims

and the failure to state a claim as to others, and because, as to certain claims relating to certain of

the Individual Defendants, the undisputed facts require judgment in favor those Defendants.

                                   *BACKGROUND*

        Plaintiff ostensibly brings suit against nine individuals (the "Individual Defendants") who

were at all times relevant to this lawsuit employed at the MDC in Brooklyn and interacted, in

some capacity, with Plaintiff while he was an inmate at the MDC: (1) Duke Terrell, the former warden; (2) Dr. Michael Borecky, a physician; (3) Dr. R. Newland, a physician[1]; (4) Freddy Nunez, a Physician Assistant ("PA"); (5) Sixto Rios, a "mid-level practitioner" ("MLP"); (6) Soroya Rosa, also a MLP; and (7)–(9) Glenford Edwards, Gail McMillan, and Toni Cuyler, whose job titles are not identified in the record.[2]

I.    Defendants' Statement of Facts

The Court takes the following facts from Defendants' Statement of Undisputed Facts, pursuant to Local Civil Rule 56.1 ("56.1 Statement" or "St."). (Dkt. 41-4.) Defendants urge the Court to convert their motion to dismiss to a motion for summary judgment. (Dkt. 41-5 at 13, 16.) Defendants properly notified Plaintiff that failure to respond to Defendants' motion for summary judgment could result in dismissal of this action, which entitles the Court to convert Defendants' motion to one for summary judgment. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (the Court may convert a motion to dismiss into a motion for summary judgment if there is "sufficient notice to [the] opposing party and an opportunity for that party to respond"). (*See* Dkt. 41-1) ("Supplemental Notice to Pro Se Plaintiff Opposing Motion to Dismiss or Motion for Summary Judgment Pursuant to Local Civil Rules 12.1 and 56.2"). To the extent Plaintiff has responded to Defendants' motion with an affidavit, as discussed *infra* Section I.C, the Court converts the motion to one for summary judgment with respect to Plaintiff's *Bivens* claims against certain of the Individual Defendants.

---

[1] Dr. Newland's first name does not appear anywhere in the record.

[2] Plaintiff misspells the names of several of the Individual Defendants in the Complaint. Accordingly, the Clerk of Court respectfully is directed to amend the caption of this case as set forth above in the case caption of this Memorandum & Opinion.

With respect to Defendants' motion to dismiss pursuant to FRCP 12(b)(1) and (6), because Plaintiff is proceeding *pro se*, the Court must construe Plaintiff's *pro se* complaint to raise the strongest arguments it suggests. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). For purposes of both Defendants' motion to dismiss and motion for summary judgment, the Court construes the facts in the light most favorable to Plaintiff, the non-moving party, and assumes as true all of Plaintiff's well-pleaded allegations. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

A.    Plaintiff's Medical Treatment

Plaintiff was detained at the MDC from October 24, 2008 through June 1, 2011. (St. ¶ 1.) On October 27, 2008, shortly after Plaintiff began serving his term of imprisonment, a non-party nurse at the MDC conducted an evaluation of Plaintiff, during which Plaintiff reported a history of testing positive for tuberculosis, among other chronic ailments. (St. ¶¶ 2–3.)[3] On October 30, 2008, a chest x-ray of Plaintiff was negative for tuberculosis. (St. ¶ 6.) On November 5, 2008, Defendant PA Nunez examined Plaintiff and recommended action items for potential follow-up treatment, including testing for tuberculosis and further testing related to Plaintiff's chronic conditions. (St. ¶ 7.)

On several occasions throughout 2009, Plaintiff visited prison medical staff for treatment. Prison medical staff evaluated and treated Plaintiff for his chronic conditions, including rheumatoid arthritis, and prescribed him medication for nausea and vomiting and other

---

[3] Three years and one day later, on October 28, 2011, Plaintiff completed a standardized medical history form in which he set forth a history of arthritis, Hepatitis C, bronchitis, sexually transmitted diseases, and asthma. (St. ¶ 5.) Plaintiff did not indicate a history of tuberculosis in this medical history form.

medication to treat symptoms of Plaintiff's asthma and rheumatoid arthritis, (St. ¶¶ 8–15.)  On one such occasion, on February 13, 2009, Plaintiff experienced nausea and vomiting, and Defendant Dr. Borecky prescribed medication to Plaintiff for treatment.  (St. ¶ 11.)

On October 20, 2009, Plaintiff reported to Defendant MLP Rios with a lesion on his right leg, which Plaintiff reported had been draining.  (St. ¶¶ 16–17.)  Defendant Dr. Borecky prescribed Plaintiff an antibiotic commonly known as Bactrim to prevent infection, with instructions to return if the lesion did not heal.  (St. ¶ 18.)  Plaintiff returned to the infirmary the next day to report that the lesion was causing him pain and continued to drain, and Defendant MLP Rosa evaluated him.  (St. ¶¶ 19–20.)  Rosa cleaned and treated the wound, and took a sample of the lesion for testing.  (St. ¶ 21.)[4]  Rosa prescribed Plaintiff drugs for pain, and directed him to report back if the lesion condition did not improve.  (St. ¶ 22.)

Five days later, on October 26, 2009, prison staff followed up with Plaintiff to discuss the infection.  PA Nunez instructed Plaintiff to continue treating the infection with the Bactrim prescribed to him.  (St. ¶¶ 24–25.)  On November 3, 2009, non-party MDC staff cleaned and treated Plaintiff's lesion.  (St. ¶ 26.)  On November 8 and 18, 2009, Plaintiff was evaluated and treated for his chronic conditions by a non-party MDC physician.  (St. ¶¶ 27–28.)  Plaintiff did not complain of pain from the lesion on his leg during the November 18 appointment, and the treating physician noted that the lesion had healed.  (St. ¶¶ 29–30.)

Some months later, on January 10, 2010, Plaintiff complained of joint pain arising from his chronic rheumatoid arthritis, for which PA Nunez prescribed Plaintiff ibuprofen.  (St. ¶¶ 31–32.)  Plaintiff was again evaluated and treated for his chronic conditions by a non-party MDC

---

[4] Testing revealed that Plaintiff was infected with Methicillin-Resistant Staphylococcus Aureus (commonly known as "MRSA").  (St. ¶ 23.)

physician on January 20, 2010, during which he complained of joint pain exacerbated by the cold weather, but did not report pain from the healed lesion. (St. ¶¶ 33–34.)

On March 24, 2010, Plaintiff reported that he had an infected lesion, again on his right leg. MLP Rios evaluated Plaintiff and again prescribed Bactrim to treat the area, and took a bacteria culture from Plaintiff's leg. (St. ¶¶ 35–37.) Five days later, on March 29, 2010, Plaintiff returned to the infirmary and was treated by PA Nunez for his chronic conditions. (St. ¶ 38.) The medical report from this visit indicates "Erythema[5], minor discharge right tibial region (current abscess TX [treatment]) otherwise nml [normal]." (Dkt. 41-2 at ECF 77.)

On April 7, 2010, Dr. Newland evaluated and treated Plaintiff for his chronic conditions, and renewed Plaintiff's prescriptions related to his asthma and rheumatoid arthritis. (St. ¶¶ 40–41.) Two days later, on April 9, 2010, MLP Rios determined that the lesion on Plaintiff's right leg had healed fully. (St. ¶ 43; *see also* Dkt. 41-2 at ECF 86 ("Inmate for [follow up] on lesion on his right lower leg, lesion is healed up, no complain[t]s.").)

On May 5, 2010, following a consultation, Dr. Newland prescribed Plaintiff a course of isoniazid prophylaxis treatment as a precautionary treatment for tuberculosis. (St. ¶¶ 44–45.)[6]

On July 7, 2010, Plaintiff complained of exacerbated joint pain from the cold conditions in the prison caused by air conditioning. Dr. Newland renewed Plaintiff's prescription for pain medication and issued Plaintiff a "lower bunk pass," which enabled Plaintiff to sleep on the lower bunk so he did not have to climb a bunk to get into bed. (St. ¶¶ 47–49.) Plaintiff at that

---

[5] Erythema is "abnormal redness of the skin due to capillary congestion." *The Merriam-Webster Dictionary*, "erythema," *available at* http://www.merriam-webster.com/dictionary/erythema (last visited Sept. 25, 2014).

[6] There is no indication in the record as to why the preventative tuberculosis treatments were initiated. Defendants state in their motion that "[p]atients with a latent tuberculosis infection are often prescribed treatment to prevent them from developing the tuberculosis disease." (Dkt. 41-4 at 7–8 n.2.)

time reported that he was properly taking his medications, including the precautionary tuberculosis treatment regimen, and had not experienced any side effects. (St. ¶ 50.)

On November 29, 2010, Plaintiff complained of a boil on his left thigh region, which had started as a rash and was causing him pain. (St. ¶ 52–53.) Plaintiff was again prescribed Bactrim, and a bacterial culture was taken by a non-party MDC PA. (St. ¶ 54.) Approximately a week later, on December 6, 2010, Plaintiff returned for treatment and it was found that he again was infected with MRSA. A non-party MDC PA prescribed further Bactrim treatment although the wound appeared to have healed by that time. (St. ¶¶ 56–57.)

On January 19, 2011, following Plaintiff's complaints regarding his treatment, a non-party MDC PA consulted with Plaintiff regarding his recurrent development of skin infections and to address Plaintiff's "concern[s] about how he got tuberculosis in the BOP [Bureau of Prisons]." (St. ¶ 58–59; Dkt. 41-2 at ECF 111.) Although Plaintiff did not at that time have a skin infection, he was counseled on proper treatment of such infections, and his prescriptions for tuberculosis and asthma were refilled. (St. ¶ 60–61.)

On January 26, 2011, Dr. Newland evaluated and treated Plaintiff in connection with his chronic conditions. (St. ¶ 62.)

On April 28, 2011, Plaintiff suffered from an asthma attack for which he received treatment by non-party MDC medical staff. (St. ¶ 67.) Four days later, on May 2, 2011, Plaintiff complained to MLP Rosa of an infection on his buttocks. (St. ¶ 69.) MLP Rosa evaluated and treated Plaintiff, prescribed him medication and ointment for the infection, and advised Plaintiff to improve his hygiene, which she identified as the potential cause of the recurring infections. (St. ¶¶ 69–70.)

On June 1, 2011, Plaintiff was transferred from the MDC in Brooklyn to the Federal Correctional Institution Williamsburg ("FCI Williamsburg") in South Carolina. (St. ¶ 72.) There, Plaintiff was examined via a chest x-ray, the results of which came back negative for infection and "demonstrated the outstanding function of [Plaintiff's] lungs." (St. ¶ 73.)

Plaintiff since has been released to a "halfway house" in Brooklyn, New York. (Dkt. 42 at ECF 8.)

B.    Plaintiff's Administrative Complaints

On or about January 1, 2011, Plaintiff submitted a "Request for Administrative Remedy Form" ("BP-9") to the MDC. (St. ¶ 74.) Plaintiff's complaint concerned the infections on his leg, and alleged that he had received inadequate medical diagnosis and treatment while incarcerated at the MDC. (St. ¶ 75.) On February 2, 2011, through Acting Warden Christine Dynan, Defendant and former Warden Duke Terrell responded to Plaintiff's complaint. (St. ¶¶ 76–79.) The response indicated that recent laboratory tests "returned results within the normal limits" and that Plaintiff had successfully been treated for the infections, which were no longer present. (Dkt. 41-3 at ECF 12.) The response concluded that "your request for administrative remedy has been partially granted as you have been provided with a response regarding your medical conditions and laboratory studies," and informed Plaintiff that he could appeal the warden's response. (Dkt. 41-3 at ECF 12.)

On or about February 11, 2011, Plaintiff appealed the response to his administrative complaint, and requested further testing because medical staff purportedly had failed to diagnose the cause of his skin infections. (St. ¶¶ 80–81.) The Regional Director of the Bureau of Prisons ("BOP") responded to Plaintiff's appeal, informing him that his appeal was denied. (St. ¶ 83–84.)

On or about April 26, 2011, Plaintiff submitted a "Central Office Administrative Remedy Appeal" ("BP-11") in which Plaintiff requested an investigation into the cause of his skin infections. (St. ¶ 85.) Plaintiff's appeal was denied because the record reflected that Plaintiff was receiving adequate medical care in accordance with applicable guidelines. (St. ¶ 86–87.)

On or about December 27, 2011, while an inmate in Williamsburg, South Carolina, Plaintiff initiated the instant action. (Dkt. 1-3.)[7]

II.   Plaintiff's Allegations

Despite largely agreeing with the chronology of events set forth by Defendants in their 56.1 Statement, Plaintiff asserts that Defendants' arguments in the present motion are based on "false evidence," and that Plaintiff "did not get proper medical treatment from [MDC's] medical staff[.]" (Dkt. 42 at 1.) Plaintiff further alleges that Defendants' failure to provide proper medical treatment "caused [Plaintiff] to go through unbelievable pain [and] suffering." *Id.*

With respect to the treatment of Plaintiff's buttocks infection, Plaintiff states, in his affidavit in opposition to Defendants' motion, that he attempted to show Dr. Newland the infection, but Dr. Newland attempted to place his finger inside Plaintiff's anus, at which point Plaintiff "pushed [Dr. Newland's] hand away and explained to him that the infection is on [Plaintiff's] buttocks; a long way from [Plaintiff's] anus." (Dkt. 42 at ECF 3.)[8] As a result, Dr. Newland refused to treat Plaintiff's infection. (Dkt. 42 at ECF 3.) Notably, the Complaint provides a slightly different account of the incident:

---

[7] Following submission of Plaintiff's initial complaint, the South Carolina District Court instructed Plaintiff to revise his complaint to proper form. Plaintiff complied, and submitted a revised complaint (hereinafter, the "Complaint"). (Dkt. 1-3.)

[8] Citations to "ECF" refer to the pagination of the Court's Electronic Court Filing ("ECF") system, rather than to the source's internal pagination.

[Dr. Newland] examined me and wanted to push his finger in my anus. He tried but I could not [bear] that much pain. He said I refuse[d] treatment because I won't let him check for prostate cancer. I told him I had it done three times in the last two years. I started the remedy process concerning the reoccurring infections I'm plag[u]ed with[.]

(Dkt. 1-3 at ECF 4–5.)

With respect to Plaintiff's leg infection, Plaintiff states that Defendant Rosa "cut[] down into [his] leg with a pair of scissors causing [him] unbelievable pain and suffering" and "spreading the infection over [his] body." (Dkt. 42 at ECF 4.) Specifically, the Complaint states that:

[Defendant] [Rosa] [] examined [his] leg, which was swollen badly. [Rosa] said she had to cut into my leg to drain the infection. The pain from the process was excruciating! [Rosa] said she couldn't use an[]esthesia because of the infection. [Rosa] squeezed as much of the poison out as possible. Cleaned and [w]rapped my leg. The results was [sic] staph infection. I was given antibiotics and pain medication.

(Dkt. 1-3 at ECF 3.)

In short, the gravamen of the Complaint is that medical staff at the MDC provided him inadequate medical treatment, causing him pain and suffering and the proliferation of skin infections on his legs and buttocks. Plaintiff also claims that he was exposed to tuberculosis when he was housed with another inmate suffering from that disease. (Dkt. 42 at ECF 4.) As such, Defendants "created or failed to correct conditions that caused [his] medical condition," causing Plaintiff injury and violating his constitutional rights. (Dkt. 42 at ECF 3.) Plaintiff seeks compensation for pain and suffering due to inadequate medical treatment. (Dkt. 1-3 at ECF 6.)

*LEGAL STANDARDS*

Defendants move for both dismissal of the Complaint pursuant to FRCP 12(b)(1) and (6), and for summary judgment pursuant to FRCP 56. The Court will convert the present motion into

a hybrid motion, and will consider Defendants' arguments for dismissal pursuant to FRCP 12 with respect to all of Plaintiff's claims, except his *Bivens* claims against certain of the Individual Defendants in their individual capacities, which the Court will consider pursuant to FRCP 56. *See infra* Section I.C.

A.     FRCP 12(b)(1)

A claim must be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," *id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)), in which case, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova*, 201 F.3d at 113).

B.     FRCP 12(b)(6)

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a 12(b)(6) motion to dismiss, the district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nielsen*, 746 F.3d at 62; *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006). The liberal notice pleading standard of FRCP 8(a)

only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 at 555. Under FRCP 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570.

C.    FRCP 56

Summary judgment pursuant to FRCP 56 "is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247–50, 255 (1986)). The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, and may not rely solely on allegations in its pleadings. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). When, as here, a litigant is proceeding *pro se*, the Court must "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). With respect to Defendants' summary judgment motion, the Court construes the facts in the light most favorable to the non-moving party and resolves all ambiguities and draws all reasonable inferences against the movant. *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Nonetheless, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

*DISCUSSION*

As an initial matter, the Court liberally construes Plaintiff's *pro se* complaint to assert causes of action for: (1) common-law tort claims against the United States and the Individual Defendants, in their *official* capacities, pursuant to the Federal Tort Claims Act ("FTCA"), sounding in negligence and medical malpractice;[9] and (2) *Bivens* claims against the Individual Defendants[10], in their *individual* capacities, for violating Plaintiff's constitutional rights, to wit, his Eighth Amendment right to be free from "cruel and unusual punishments." (*See* Dkt. 41-5 (construing Plaintiff's claims).)[11]

---

[9] Even though the United States is not named as a defendant in the Complaint or Plaintiff''s opposition to the present motion, because a logical reading of the Complaint indicates that Plaintiff sought to allege a common law tort claim against the Bureau of Prisons as an agency of the United States, the Court construes the Complaint as alleging a common law tort against the United States under the FTCA. *See Torres v. Anderson*, 674 F. Supp. 2d 394, 396 (E.D.N.Y. 2009) (construing claims under the FTCA to be implicitly asserted against the United States as the proper party to be sued); *Megna v. Food & Drug Admin.*, 2009 WL 749900, at *5 (E.D.N.Y. Mar. 17, 2009) (construing tort claims brought against the Food & Drug Administration to be asserted against the United States, the proper party in an FTCA suit).

[10] *Bivens* claims do not lie against the United States or its agencies. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.").

[11] Claims for constitutionally inadequate medical treatment generally fall under the auspices of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that although "deliberate indifference" to a prisoner's serious medical needs is cruel and unusual punishment, not every claim by a prisoner that he has not received adequate medical treatment establishes a violation of the Eighth Amendment.) "In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

I.      Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) and (6)

   A.      The FTCA Permits the United States, but not the Individual Defendants,
           to be Sued for Common Law Torts

The United States is immune from lawsuits except in instances where the United States

has consented to being sued.  *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 368–69 (E.D.N.Y.

2005) (citing *Fed. Deposit. Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994)) ("[T]he United States

simply has not rendered itself liable . . . for constitutional tort claims.").   Under the FTCA, the

United States has waived its sovereign immunity, and consented to being sued, with respect to

certain common law tort claims arising out of the conduct of its employees, such as Plaintiff's

negligence and medical malpractice claims.   *See* 28 U.S.C. §§ 2674, 2679; *Devlin v. United*

*States*, 352 F.3d 525, 530 (2d Cir. 2003) ("[T]he FTCA waives the federal government's

sovereign immunity against certain tort claims arising out of the conduct of its employees.");

*Nwaokocha*, 369 F. Supp. 2d at 371 (quoting *Celestine v. Mount Vernon Neighborhood Health*

*Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) ("The FTCA 'waives the United States'[] sovereign

immunity for certain classes of torts claims.").  The FTCA provides, in relevant part:

>    "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on
>    claims against the United States, for money damages, accruing on and after
>    January 1, 1945, for injury or loss of property, or personal injury or death caused
>    by the negligent or wrongful act or omission of any employee of the Government
>    while acting within the scope of his office or employment, under circumstances
>    where the United States, if a private person, would be liable to the claimant in
>    accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1).  The FTCA is the exclusive remedy for a suit for damages for personal

injury or damage to property "resulting from the negligent or wrongful act or omission of any

employee of the Government while acting *within* the scope of his office or employment."   28

U.S.C. § 2679(b)(1) (emphasis added).

However, the limited waiver of the FTCA applies only to the United States itself, and not federal employees, such as the Individual Defendants, acting within the scope of their employment, *i.e.*, acting in their official capacities. *See Liranzo v. United States*, 690 F.3d 78, 84–85 (2d Cir. 2012) (noting that the FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances").[12]

Furthermore, the United States has not waived its sovereign immunity as to lawsuits grounded in constitutional violations, and no subject matter jurisdiction lies with respect to such claims. *See id.* Because claims brought against federal employees in their official capacities are deemed to be brought against the United States, such these claims are also barred by sovereign immunity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (noting that *Bivens* actions "must be brought against the federal officers involved in their *individual* capacities" because "[u]nder the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. . . . Therefore, to the extent that [plaintiff's] claims constituted a *Bivens* action against [the Federal agency] or the individual federal defendants in their official capacities, they were properly dismissed for want of subject matter jurisdiction.") (emphasis added). Thus, the only claims that can be brought against the Individual Defendants must allege a constitutional violation against these Defendants, in their individual capacities, as part of a *Bivens* action. *See id.*; *Kurzberg v. Ashcroft*, 619 F.3d 176, 176 n.* (2d Cir. 2010) (quoting *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only

---

[12] The FTCA also does not provide a remedy for violations of constitutional or statutory rights by federal employees, acting in their individual capacities, such as alleged in Plaintiff's *Bivens* claims. 28 U.S.C. § 2679(b)(2)(A)–(B).

remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.").

Therefore, Plaintiff's common law tort claims against the Individual Defendants are dismissed as barred by the doctrine of sovereign immunity, and the Court lacks subject matter jurisdiction to consider them under the FTCA. *See* 28 U.S.C. § 1346(b); *Rivera v. United States*, 928 F.2d 592, 608–09 (2d Cir. 1991) (the FTCA "provides government employees with immunity against claims of common-law tort"). Any *Bivens* claims against the Individual Defendants, in their *official* capacities, are also dismissed as barred by sovereign immunity. *See Robinson*, 21 F.3d at 510 ("Therefore, to the extent that Robinson's claims constituted a *Bivens* action against . . . the individual federal defendants in their official capacities, they were properly dismissed for want of subject matter jurisdiction.").

> **B.** **Plaintiff's Common Law Tort Claims Against the United States Fail for Failure to Exhaust Administrative Remedies**

A Plaintiff's ability to sue under the FTCA is subject to strict administrative remedy exhaustion requirements. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Exhaustion under the FTCA requires that the claim be "*presented in writing* to the appropriate Federal agency within two years after such claim accrues" or if the "action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (emphasis added). The FTCA's exhaustion requirement is a matter of jurisdiction and, therefore, is not subject to waiver. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). "Because the FTCA constitutes a waiver of sovereign immunity, the procedures set forth [therein] must be adhered to strictly." *Keene Corp. v. United States*, 700 F.2d 836, 841

(2d Cir. 1983). Accordingly, "[t]he burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).

In order to exhaust the FTCA administrative review requirements with respect to a BOP-related claim, the inmate must file his claim with the appropriate BOP Regional Office and then appeal, if that request is denied, to the BOP General Counsel's office. 28 C.F.R. §§ 543.21, 543.32; *see Celestine*, 403 F.3d at 82 ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court."). Moreover, applicable BOP regulations provide that, in order to exhaust administrative remedies, a complainant must submit a claim for money damages for personal injury with the BOP. *See* 28 C.F.R. § 543.30 ("Pursuant to the [FTCA], a claim for money damages for personal injury or death and/or damage to or loss of property must be filed against the United States by the injured party with the appropriate Federal agency for administrative action."). The form created for purposes of submitting a claim for money damages with the BOP is the Form SF-95.

Plaintiff's Complaint and opposition to the motion do not plead compliance with the FTCA exhaustion requirements. Although Plaintiff submitted at least three complaint forms to administrators within the BOP system,[13] he failed to exhaust his administrative remedies. First, Plaintiff did not submit a written demand for damages to the BOP within two years of the claim accruing. *See* 28 U.S.C. § 2401(b) (requiring the plaintiff to first present his or her tort claims "in writing to the appropriate Federal agency within two years after such claim accrues").

---

[13] Plaintiff's opposition to the motion states several instances in which Plaintiff submitted administrative complaint forms to various administrators in the prison system. (*See* Dkt. 42 at 5.) Indeed, Defendants acknowledge that Plaintiff submitted these administrative complaints. (*See* Dkt. 41-5 at 8–9.)

Second, Plaintiff did not submit a "Form SF-95 with the Bureau of Prisons Regional Office where the claim occurred" (Dkt. 41-5 at 15), or, for that matter, any claim for money damages with the BOP. Rather, as Plaintiff acknowledges, he submitted only general complaint forms, the BP-8, BP-9, BP-10, and BP-11, relating to prison conditions, and not asserting a tort claim against the BOP. (Dkt. 42 at 5.) Accordingly, Plaintiff has not alleged, and cannot allege, that he exhausted his administrative remedies, as required under the FTCA, and the Court thus lacks subject matter jurisdiction over his FTCA claims against the United States, which are dismissed pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction.[14]

      C.      Plaintiff's *Bivens* Claims Against Certain of the Individual Defendants, In Their Individual Capacities, Fail to State a Claim

Under the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, a plaintiff may assert claims for damages against federal officers in their individual capacities for violating the plaintiff's constitutional rights. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing private right of action against individual prison officials apart from FTCA claim, and noting that "[b]ecause the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy").

---

[14] This is more than a matter of procedural hurdles. The purpose of the so-called "presentment" requirement is to enable the federal government to expedite the fair settlement of tort claims. *See Romulus v. United States*, 160 F.3d 131, 131 (2d Cir. 1998) ("A claimant must provide more than conclusory statements which afford the agency involved no opportunity to investigate."). Here, by failing to properly present his claims for money damages to the BOP, Defendant deprived the BOP of the opportunity to efficiently investigate and remedy Plaintiff's tort claims. Although Plaintiff complained at different times while at the MDC about certain health care issues, he never raised the core allegations now in his Complaint, such as not receiving proper medical attention or treatment and being exposed to tuberculosis through the placement of another inmate in his cell.

To properly assert a claim under *Bivens*, a plaintiff must allege that the particular defendant, by way of an act or omission, directly contributed to a violation of the plaintiff's constitutional rights. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff makes no specific arguments with respect to Defendants' motion to dismiss the *Bivens* claims against the Individuals Defendants, other than to reiterate that he received inadequate medical treatment due to the "deliberate indifference" of the Defendants, causing him pain and suffering. (Dkt. 42 at ECF 3.) The Court addresses Plaintiff's *Bivens* claims as to each of the Individual Defendants.

1. Plaintiff's *Bivens* Claims Against Defendant Terrell

With respect to Plaintiff's *Bivens* claim against Defendant Terrell, the former warden of the MDC, Plaintiff argues in his opposition that he "asked him personally every week to help me with my situation because I need to see an outside doctor." (Dkt. 42 at 2.) Defendants argue that Terrell cannot be held liable, in his individual capacity, merely through his supervisory role as warden and that Plaintiff must, but has failed to, allege specific acts or omissions by Terrell.

(Dkt. 41-5 at 16.)[15]  Plaintiff's allegation that Terrell refused to let Plaintiff see an outside doctor, accepted as true, constitutes an act or omission on Terrell's part, thus taking Plaintiff's claims outside of merely alleging *respondeat superior* liability as to Terrell.  However, even construed as such, this allegation is insufficient to state a plausible claim that it was medically necessary for Plaintiff to see an outside doctor or that Terrell's alleged refusal to allow Plaintiff to obtain outside treatment resulted in any injury.  Plaintiff alleges no facts showing that the care he received at MDC was infirm, nor has he alleged any facts demonstrating that Terrell was deliberately indifferent to his medical needs.  *See infra* Section I.C.1.  Thus, the single factual allegation that Plaintiff told Terrell that he wanted to see an outside doctor fails to state a plausible claim that Terrell violated Plaintiff's Eighth Amendment rights, and Plaintiff's *Bivens* claims as to Terrell are dismissed pursuant to FRCP 12(b)(6).

## 2. Plaintiff's *Bivens* Claims Against Defendant Nunez

Plaintiff's *Bivens* claims against Nunez must be dismissed because, as a public health service employee, Nunez is immune from suit under the Public Health Service Act ("PHSA").  42 U.S.C. § 233(a).  The PHSA "grants absolute immunity to [public health service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."  *Hui v. Castaneda*, 559 U.S. 799, 806, 809–10 (2010) (citing 42 U.S.C. § 233(a)).  BOP health care employees, such as Nunez, qualify as public health workers under the PHSA and are entitled to immunity under the Act.  *See Ford v. Spears*, 10-CV-1314, 2012 WL 4481739, at *5 (E.D.N.Y.

---

[15] Although Plaintiff argues in opposition to the motion that he complained to Terrell regarding his health issues, no such allegation appears in the Complaint.  However, the Court may consider allegations contained in a *pro se* plaintiff's memorandum of law insofar as such allegations are consistent with those contained in the complaint.  *Andino v. Fischer*, 698 F. Supp. 2d 362, 765–76 (S.D.N.Y. 2010 (citing *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990)).

Sept. 27, 2012) (Dearie, J.) (finding specifically that Nunez was a covered employee under the PHSA and dismissing claims against him under 42 U.S.C. § 233(a) and FRCP 12(b)(1)). Plaintiff makes no allegation that his interactions with Nunez were in any way outside Nunez's employment as a public health worker. Accordingly, Plaintiff's claims with respect to Nunez are barred by the PHSA, and are dismissed, pursuant to FRCP 12(b)(1).

4.  *Bivens* Claims as to Defendants Cuyler, Edwards, and McMillan

Plaintiff's only allegation with respect to the personal and direct involvement of Defendants Cuyler, Edwards, and McMillan is that they were negligent in placing an inmate who allegedly was suffering from tuberculosis in Plaintiff's cell. (Dkt. 42 at ECF 4.) However, Plaintiff provides no factual basis for his belief that the inmate had active tuberculosis, except that the inmate would cough "day [and] night." (Dkt. 42 at ECF 4.) Nor does Plaintiff allege any facts indicating that Cuyler, Edward, or McMillan knew, or had reason to believe, that the other inmate had tuberculosis. Plaintiff also has failed to allege any facts to support a claim that he was injured or suffered pain as a consequence of this alleged exposure. Indeed, the undisputed record shows that Plaintiff, in fact, was not exposed to, and did not contract, tuberculosis. *See infra* Section I.C. Plaintiff's threadbare and conjectural allegation regarding Cuyler, Edwards, and McMillan engaging in conduct that purportedly caused Plaintiff to be exposed to tuberculosis is plainly insufficient to state a claim that these Individual Defendants violated Plaintiff's Eighth Amendment rights. Accordingly, Plaintiff's *Bivens* claims against Cuyler, Edwards, and McMillan are dismissed pursuant to FRCIP 12(b)(6).[16]

---

[16] Given the Court's dismissal of the *Bivens* claims against Cuyler, Edwards, and McMillan, the Court need not consider Defendant's summary judgment motion with respect to these three Individual Defendants. However, the Court also finds that Plaintiff has failed to adduce sufficient evidence to withstand summary judgment on these claims. Plaintiff has not raised a genuine issue of fact regarding whether the inmate housed with Plaintiff suffered from

II.     Defendants' Motion for Summary Judgment

Defendants move for summary judgment with respect to Plaintiff's *Bivens* claims against the Individual Defendants. (Dkt. 41-5 at 16–25.) As previously discussed, in connection with their motion, Defendants warned Plaintiff that failure to respond to Defendants' 56.1 Statement could result in dismissal of these claims. (*See* Dkt. 41-1.) Such warning constitutes "sufficient notice to [the] opposing party and an opportunity for that party to respond," *Groden*, 61 F.3d at 1052, which permits the Court, in its discretion, to convert all or part of Defendants' motion to a motion for summary judgment, where appropriate. *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (holding that a district court may convert a FRCP 12(b)(6) motion to one for summary judgment as long as all parties are granted an opportunity to submit supporting material). Plaintiff had the opportunity to submit supporting materials, and, indeed, submitted his opposition to Defendants' summary judgment motion in the form of a sworn affidavit. (Dkt. 42.) Accordingly, the Court finds it proper to convert the motion to one for summary judgment with respect to Plaintiff's remaining *Bivens* claims against Individual Defendants Dr. Newland, Dr. Borecky, MLP Rios, and MLP Rosa.

Additionally, because Plaintiff did not oppose Defendants' 56.1 Statement (Dkt. 41-4) by submitting a counterstatement, despite notice that failure to do so could result in all of the facts set forth therein being deemed admitted, the Court deems Defendant's 56.1 Statement unopposed, and all of the facts contained therein as admitted. Nevertheless, the Court has considered Plaintiff's opposition to Defendants' motion in determining whether Plaintiff's factual assertions raise genuine issues of material fact.

---

tuberculosis, whether Plaintiff was exposed to tuberculosis, or whether he contracted tuberculosis. Indeed, as discussed *infra*, the undisputed evidence does not show that Plaintiff was exposed to tuberculosis while at the MDC.

A.     <u>Deprivation of Medical Treatment under the Eighth Amendment</u>

To establish a claim for violation of Eighth Amendment rights arising from inadequate medical treatment, a plaintiff must demonstrate that the defendants exhibited "'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The standard for deliberate indifference consists of a subjective and an objective component. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious,'" and the subjective component requires that the defendant "must act with a sufficiently culpable state of mind." *Id.* (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety'" which requires that "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, even liberally construing the Complaint, along with the allegations contained in Plaintiff's opposition to the present motion, Plaintiff's allegations do not raise a genuine issue of triable fact as to his Eighth Amendment claims. Upon any reading of the Complaint and Plaintiff's opposition, it is readily apparent that Plaintiff received timely and substantial medical treatment on numerous occasions, and was never denied access to medical care and treatment. Plaintiff fails to raise a genuine dispute that the care he received at the MDC was inadequate or that any act or omission by the Individual Defendants constituted a deprivation, in objective terms, of necessary medical treatment. At best, Plaintiff alleges that he experienced pain during the course of his medical treatment and that he was personally dissatisfied with the treatment he received at the MDC, and, at some point, wanted to be treated by an outside medical

professional. (Dkt. 42 at ECF 3–4; Dkt. 1-3 at ECF 3–6.) Such disagreement or preference for treatment of one's own choosing, absent allegations demonstrating deliberate indifference, is inadequate to give rise to a constitutional claim. *See Armstrong*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Construed in the light most favorable to Plaintiff, there is inadequate factual material to satisfy either the objective component of the inquiry, *i.e.*, that the Individual Defendants deprived Plaintiff of adequate or necessary medical treatment, or the subjective component, *i.e.*, that the Individual Defendants acted with deliberate indifference to Plaintiff's medical needs. Additionally, Plaintiff adduces no evidence that "the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all," which could substitute for a finding of deliberate indifference. *Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

With respect to Plaintiff's *Bivens* claims as to the remaining Individual Defendants, Drs. Newland[17] and Borecky and MLPs Rios and Rosa, based upon the Court's review of the record, there are no genuine issues of material fact that could give rise to a finding that these Individual Defendants violated Plaintiff's Eighth Amendment rights. The undisputed record reveals that Plaintiff frequently sought, and timely received, adequate medical treatment for his health complaints. Again, that Plaintiff may have experienced pain during certain medical procedures performed by these Individual Defendants does not provide a sufficient basis for Plaintiff's

---

[17] Plaintiff's claims against Dr. Newland also are dismissed pursuant to FRCP 12(b)(5) for insufficient service of process. Plaintiff has not demonstrated that Dr. Newland ever was properly served.

claims that he was provided inadequate medical care or that the Individual Defendants were negligent or deliberately indifferent in providing him medical treatment.[18] (*See*, *e.g.*, Dkt. 42 at ECF 3 (alleging that MLP Rosa caused Plaintiff "unbelievable pain and suffering" when she drained fluid from an infected area on Plaintiff's leg).) *See Armstrong*, 144 F.3d at 703 ("[T]he deliberate indifference standard requires the plaintiff to prove that the prison official knew of and disregarded the plaintiff's serious medical needs.").

With respect to the only instance where Plaintiff alleges he was denied medical treatment, Plaintiff claims that Dr. Newland declined to provide medical treatment relating to Plaintiff's buttocks infection after Plaintiff refused to allow Dr. Newland to examine Plaintiff's anus. (Dkt. 42 at ECF 3.) However, Plaintiff does not allege that Dr. Newland's purported refusal to treat Plaintiff, on this one occasion, resulted in any injury or other adverse results to Plaintiff, such as exacerbated symptoms, additional infection, or further pain and suffering.

Plaintiff also alleges that he was exposed to tuberculosis while at the MDC, but sets forth no allegation that he ever contracted tuberculosis or received inadequate treatment for the exposure. (*See* Dkt. 42 at ECF 3.) Indeed, Plaintiff's *only* allegation with respect to his purported exposure is that Defendants Cuyler, Edwards, and McMillan "put an inmate in my (two man) cell that was suffering from tuberculosis." *Id.* Furthermore, the undisputed record shows that (1) Plaintiff had a history of tuberculosis prior to his incarceration at the MDC (St. ¶¶ 2–3); (2) Plaintiff was treated with anti-tuberculosis drugs as a precautionary measure due to Plaintiff's latent tuberculosis and his *belief* that he had been exposed (St. ¶¶ 44–45); and (3) Plaintiff never tested positive for active tuberculosis while incarcerated at the MDC or after

---

[18] Plaintiff's bare allegation that the procedure resulted in "The infection spread[ing] over his body for 3 years" (Dkt. 42 at ECF 1) is baseless and unsupported by the record, which indicates Plaintiff's leg lesions were healed.

being transferred to FCI Williamsburg.  (*See* Dkt. 41-2; St. ¶ 3.)[19]  Plaintiff's bare allegation that he was placed in the same prison cell as another inmate who Plaintiff *believed* had tuberculosis does not raise a genuine issue of fact requiring a trial.  Accordingly, the Court grants summary judgment in favor of Individual Defendants Dr. Newland, Dr. Borecky, MLP Rios, and MLP Rosa with respect to Plaintiff's claims that they violated Plaintiff's Eighth Amendment rights with respect to his alleged exposure to tuberculosis at the MDC.

*CONCLUSION*

For the reasons stated above, Plaintiff's Complaint is dismissed in its entirety.  The Clerk of Court respectfully is directed to enter judgment in favor of Defendants and terminate this matter.  Plaintiff's claims are dismissed with prejudice because amendment would be futile.  "While district courts should generally not dismiss *pro se* claims without affording leave to amend, it need not do so when amendment would be futile."  *Cancel v. New York City Human Resources Admin./Dep't of Soc. Servs.*, 527 Fed. App'x 42, 44 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112) (2d Cir. 2000) (holding that amending the complaint would be futile where the complaint did not indicate that "plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").  The Clerk of Court respectfully is directed to terminate this matter.

SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: September 29, 2014
       Brooklyn, New York

---

[19] Indeed, Plaintiff's only test for tuberculosis in the record was negative. (Dkt. 41-2 at ECF 15.)